Jerry L. BRANCH, Valenna Branch, Colby Branch, Plaintiffs–Appellants,

v.

Dale L. TUNNELL, Individually and as Special Agent of Bureau of Land Management, State of Montana, Defendant–Appellee.

No. 93–35144.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1993.

Decided Jan. 12, 1994.

Robert J. Waller, Waller & Womack, P.C. and Gary G. Broeder, Veeder & Broeder, P.C., Billings, MT, for plaintiffs-appellants.

Richard A. Olderman, Frank W. Hunger, Asst. Atty. Gen., Lorraine I. Gallinger, U.S. Atty., and Barbara L. Herwig, Atty., Civ. Div., Dept. of Justice, Washington, DC, for defendant-appellee.

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Before: LAY,* THOMPSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Three years ago, we reversed the district court's holding that the *Bivens*[1] complaint filed by plaintiffs Jerry L. Branch and his daughters Valenna and Colby Branch (collectively, Branch) could survive a motion to dismiss premised on the defense of qualified immunity. *Branch v. Tunnell,* 937 F.2d 1382 (9th Cir.1991) (*Branch I* ). Branch alleged that defendant Dale L. Tunnell, a Special Agent with the Interior Department's Bureau of Land Management (BLM), violated Branch's Fourth Amendment rights by knowingly or recklessly misleading the magistrate judge in an affidavit for warrants to search Branch's home and business. We held that a district court must apply a "heightened pleading standard" in *Bivens* or § 1983 cases where the defendant's subjective intent is an element of the plaintiff's constitutional tort. *Id.* at 1386.

In the interim, several events of note have taken place. Branch returned to the district court and filed an amended complaint, which Tunnell met with another motion to dismiss. The district court granted the motion, finding that Branch had failed to allege specific facts tending to show that Tunnell either knew or should have known of allegedly false statements in the affidavit. After the district court issued its ruling, the Supreme Court, in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), held that a federal court may *not* apply a heightened pleading standard to a complaint alleging municipal liability under § 1983.

Branch appeals, arguing that the district court erred in applying the heightened pleading standard, and that even if the district court applied that standard correctly, we must overrule *Branch I* in light of *Leather-*

---

1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*man.* We disagree with Branch on both counts. Branch's amended complaint fails to meet the standard we articulated in *Branch I.* Because the Court in *Leatherman* expressly stated it was not deciding whether federal courts may employ a heightened pleading standard in qualified immunity cases, we are bound by our holding in *Branch I.* We have jurisdiction, 28 U.S.C. § 1291, and we affirm the district court's judgment.

## I

In 1986, the Montana Department of Revenue (MDOR) audited various oil and gas field operators to determine whether they were paying the proper amount of production taxes to the State. Among the entities MDOR audited was Branch Oil and Gas (Branch Oil); Branch is the president of Branch Oil, and he owns 50% of the corporation's stock.

After conducting these audits, MDOR requested internal records from companies that purchased natural gas from the field operators. On May 29, 1987, MDOR lodged such a request with Aloe Ventures Gathering System (Aloe Ventures), a joint venture in which Branch Oil is the managing partner and owns a 42.95% interest, and which purchases gas from Branch Oil. A dispute arose concerning the scope of MDOR's request. Citing confidentiality provisions in certain of its records, Aloe Ventures asked MDOR to explain the relevance of the items requested.

In April 1987, Tunnell began investigating whether Branch and Branch Oil were avoiding royalty payments on federal natural gas leases. Pursuant to the Mineral Lands Leasing Act (Act), 30 U.S.C. §§ 181–287, the Secretary of the Interior leases federal oil and gas reserves to private parties such as Branch Oil. In exchange for its lease, the private party pays to the federal government a royalty; the royalty is calculated according to the price the private party receives from its purchasers for the oil or gas it extracts. The Secretary has broad powers to audit and investigate lessees to ensure compliance with the Act's royalty provisions. *Id.* §§ 1711(a), 1717(a). The State (vis-a-vis MDOR) calculates its tax on oil and gas producers in a similar manner.

Before investigating Branch Oil, Tunnell had been involved in the investigation of an entity known as Western Reserves, Inc. The BLM suspected that Western Reserves had set up a shell corporation and sold to it natural gas at a below-market price, thereby yielding lower royalty and tax calculations. The Western Reserves investigation eventually led to the filing of criminal charges.

Tunnell suspected that the Branch Oil–Aloe Ventures arrangement was similar to the unlawful operation he'd investigated at Western Reserves. Specifically, Tunnell believed that Branch Oil and Aloe Ventures negotiated for the price of gas in a less-than-arms-length transaction, that Branch Oil would underprice the gas it sold to Aloe Ventures, and that Aloe Ventures, in turn, would resell the gas to other purchasers at a significantly higher price. Tunnell believed that the Aloe Ventures profit yield included income upon which Branch Oil's federal lease royalties should have been calculated. At some point during his investigation, Tunnell learned from MDOR officials of the ongoing dispute between MDOR and Aloe Ventures concerning the document request.

On July 15, 1987, Tunnell filed with a United States magistrate judge an application for warrants to search Branch's home and place of business. Tunnell's four-page warrant affidavit set forth the evidence he claimed to have obtained in the course of investigating the alleged royalty-evasion scheme. Tunnell attributed much of the information in his affidavit to Peter Donnelly, a revenue agent with MDOR. The magistrate judge issued the warrants, and federal agents executed them on the following day, July 16, 1987. Neither federal nor state authorities ever filed criminal charges against Branch, Branch Oil, or Aloe Ventures.

Branch filed this *Bivens* action on June 22, 1988, alleging a violation of his Fourth Amendment right to be free from unreasonable searches. Branch alleged a conspiracy between the BLM and MDOR to obtain the documents that Aloe Ventures refused to produce; Branch further alleged that Tunnell's warrant affidavit was a mere pretext to

secure those documents. Tunnell thereafter moved to dismiss the complaint on the ground that Branch's complaint failed to overcome Tunnell's qualified immunity. The district court denied the motion, and Tunnell appealed.

We reversed and remanded. Following the lead of the District of Columbia Circuit, see, e.g., Siegert v. Gilley, 895 F.2d 797, 801–02 (D.C.Cir.1990), aff'd on other grounds, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), we adopted a "heightened pleading standard" for Bivens and § 1983 cases where the defendant is entitled to assert the qualified immunity defense and where her or his knowledge or intent is an element of the plaintiff's constitutional tort:

> [I]n order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.

Branch I, 937 F.2d at 1386 (quotation marks omitted). In the context of Branch's claim that Tunnell had deceived the magistrate judge in the course of obtaining the warrants, we held that this new standard obligated Branch to point to specific portions of the affidavit that Branch alleged were false; to allege "some facts" showing that Tunnell was aware (or should have been aware) of those statements' falsity; and to allege that the statements were necessary to the magistrate judge's probable cause finding. Id. at 1387. We determined that Branch's complaint fell short of this mark and therefore remanded the case to the district court so Branch could amend the complaint in conformity with the new standard. Id. at 1388.

Branch then filed an amended complaint. This complaint identifies 11 alleged falsehoods in Tunnell's affidavit, and lists seven facts that, according to Branch, demonstrate that Tunnell knew or should have known that those statements were false. Branch also alleges that those false statements were necessary to the magistrate judge's finding of probable cause to issue the warrants.

Tunnell moved to dismiss the amended complaint, arguing that Branch had failed to meet the heightened pleading standard. The district court granted the motion, holding that, although Branch met the first prong of the Branch I test by listing specific falsehoods in Tunnell's warrant affidavit, he failed to allege facts showing that Tunnell knew or should have known the statements were false. Branch filed this timely appeal.

## II

We consider first Branch's argument that his complaint was sufficient to survive Branch I's heightened pleading standard. At bottom, Branch's constitutional claim is that Tunnell deceived the magistrate judge in procuring the search warrants. In Branch I, we held that the heightened pleading standard requires a plaintiff bringing such a claim to satisfy three requirements:

> [A] plaintiff's complaint must contain nonconclusory allegations that the defendant knowingly included false statements in the affidavit or did so with reckless disregard. That is, he must [1] "point out specifically the portion of the warrant affidavit that is claimed to be false," and [2] allege some facts tending to show that the defendant was aware or should have been aware of the falsity of those statements. [3] He must also allege that the false statements were "necessary to the finding of probable cause," but without the particularity required of his allegations regarding the defendant's state of mind.

937 F.2d at 1387 (citations omitted) (quoting Franks v. Delaware, 438 U.S. 154, 156, 171, 98 S.Ct. 2674, 2676, 2684, 57 L.Ed.2d 667 (1978)).

The district court held that, although Branch met the first of these requirements by identifying particular statements in Tunnell's affidavit that Branch claims were false, he failed to clear the second hurdle. The district court separated into two categories Branch's allegations of Tunnell's awareness of (or reckless disregard for) the statements' falsity: (1) that Tunnell created the false impression that he had more experience in the investigation of royalty-underpayment

schemes than he actually did, and (2) that Tunnell misrepresented to the magistrate judge information that he claimed to have received from Donnelly. The district court held that the first set of allegations did not in any way suggest that Tunnell was aware of (or recklessly disregarded) the purportedly false statements in his affidavit, and that the second set of allegations were undercut by statements in Donnelly's deposition testimony.

Reviewing the matter de novo, *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992), we conclude that the district court was correct.

### A

■ Tunnell argues that, whereas his warrant . affidavit was specific and detailed, Branch has pointed only to full sentences or paragraphs (each of which contains numerous factual statements) and alleged they were false. Tunnell insists that the first *Branch I* factor requires greater specificity. This argument fails.

While Branch does allege the wholesale falsity of some paragraphs in the Tunnell affidavit, *Branch I* doesn't require anything more. We said only that a plaintiff must identify the specific "portion of the warrant affidavit that is claimed to be false," 937 F.2d at 1387 (quotation marks omitted), not that a plaintiff must identify which words or phrases are allegedly false.

### B

Branch argues that ¶ 17 of the amended complaint includes seven allegations which tend to show that Tunnell knew or should have known that many statements in his warrant affidavit were false. We agree with the district court's conclusion that these allegations fail to satisfy the second requirement of the *Branch I* standard. We first address a threshold issue concerning the documents the district court considered in resolving this question, and then turn to the various allega-

tions contained in ¶ 17 of the amended complaint.

### 1

Paragraph 17 refers to, but Branch did not attach to his amended complaint, two documents generated prior to the district court's ruling on Tunnell's initial motion to dismiss. The first of these is Donnelly's deposition testimony, which, according to the amended complaint, contradicts the statements Tunnell attributed to Donnelly in the warrant affidavit; the second is a 1989 affidavit executed by Tunnell. The district court noted that the deposition transcript was not attached to the amended complaint, but nevertheless treated the transcript as part of the pleading for purposes of deciding Tunnell's motion to dismiss.[2]

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). When "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). "However, material which is properly submitted *as part of the complaint* may be considered" on a motion to dismiss. *Hal Roach Studios,* 896 F.2d at 1555 n. 19 (emphasis added).

■ We have said that a document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir.1982). The leading commentators state that "when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762–63 (2d ed. 1990); *accord Romani v. Shearson Lehman Hutton,* 929 F.2d

---

**2.** Branch did attach a copy of Tunnell's warrant affidavit.

875, 879 n. 3 (1st Cir.1991). We have previously indicated approval of this rule, but have not explicitly adopted it. *See, e.g., In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 n. 2 (9th Cir.1993). As it makes sense and comports with existing practice, we hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration does "not convert the motion to dismiss into a motion for summary judgment." *Romani*, 929 F.2d at 879 n. 3.

Neither side questions the authenticity of the Donnelly deposition or the 1989 Tunnell affidavit, and both documents are expressly mentioned in the amended complaint. The district court did not err in considering either document.

## 2

■ We turn now to the crux of the controversy: whether the allegations in ¶ 17 meet the second *Branch I* requirement. We agree with the district court that they do not.

The amended complaint first alleges that Donnelly, in his deposition, said that many of the statements Tunnell attributed to him in the warrant affidavit were either inaccurate or never made at all. The differences that Branch points to, however, are trivial. For example, Tunnell stated in the warrant affidavit that Donnelly informed him of possible violations of 18 U.S.C. § 1001 by Branch Oil. Donnelly testified that, although he advised Tunnell of specific facts uncovered during the MDOR audit of Branch Oil, he wasn't familiar with § 1001. Donnelly's lack of familiarity with federal criminal statutes does not

show that Tunnell lied about Donnelly's information; it shows only that Tunnell, a *federal* official, might have recognized that federal statutes were implicated on the basis of facts relayed to him by Donnelly, a *state* official. Indeed, Donnelly's testimony confirms that Tunnell did mention certain federal criminal statutes to him, and that those statutes had no meaning to Donnelly.[3] Because nothing in the Donnelly deposition suggests that Tunnell knew or should have known that statements in his warrant affidavit were false,[4] we agree with the district court that the allegations centered on the Donnelly deposition do not satisfy *Branch I*'s second requirement.

The amended complaint next alleges that Tunnell, in his 1989 affidavit, contradicted or retreated from many statements he made in the warrant affidavit. Again, the purported "discrepancies" are not substantial. Tunnell stated in the warrant affidavit that Branch Oil was responsible for taxes and royalties on "approximately 24 leases" in an amount exceeding $500,000. The alleged "retreat" is Tunnell's assertion in 1989 that Branch Oil "owned an interest" in (as opposed to owned outright) the 24 leases. As there is no indication that a partial-interest owner bears no responsibility for these tax obligations, the "difference" between Branch Oil owning 24 leases as opposed to owning an interest in those leases does not undercut the veracity of Tunnell's representations to the magistrate judge.

The amended complaint's next allegation concerns Tunnell's purported lack of experience as a federal agent. Branch claims that Tunnell knowingly lied to the magistrate

---

**3.** Branch also argues that, whereas Tunnell's warrant affidavit included the statement that MDOR had estimated that Branch Oil was responsible for more than $500,000 in unpaid state and federal taxes, Donnelly denied making such a statement. In fact, Donnelly testified that he wouldn't have given Tunnell "a federal tax number" because he, Donnelly, wouldn't have known how to calculate Branch Oil's federal tax liability. Nor did Donnelly deny telling Tunnell that his estimate was around $500,000; rather, he stated only that he couldn't recall making such an estimate.

**4.** If anything, the Donnelly deposition *supports* the warrant affidavit. The warrant affidavit states that an MDOR audit disclosed that, with respect to one federal lease, Branch Oil had unpaid royalties over a three-year period totaling $13,713.05. Donnelly testified that he provided Tunnell with that exact figure. The amended complaint alleges that this concurrence between the deposition and the warrant affidavit is irrelevant, given that Branch Oil and MDOR were involved in an ongoing and open dispute over the proper method for calculating royalty payments. The existence of that dispute, however, does not call into question the veracity of Tunnell's representations to the magistrate judge.

judge about the breadth of his experience as a law enforcement official. The warrant affidavit, which Tunnell executed on July 15, 1987, states that Tunnell had been employed with the BLM since May 5, 1986. Tunnell stated that he had been involved in law enforcement for the previous 17 years, and that during that time he had participated in criminal investigations of individuals, partnerships, and corporations. Branch points to no facts indicating that these representations were false.

The amended complaint next alleges that Tunnell's representations to the magistrate judge concerning the similarities between the Branch Oil–Aloe Ventures and Western Reserves cases ignored clear differences between the two. The only fact that the amended complaint alleges to support this assertion is that, according to MDOR records, Aloe Ventures purchased a third of its gas from operators who owned no interest in the joint venture. Tunnell, however, did not represent that the two cases were identical; rather he stated there were "substantial similarities" between the cases.

The amended complaint also alleges that Tunnell's representations to the magistrate judge that Branch Oil and Aloe Ventures shared a common business address and telephone number were knowingly false (or made with reckless disregard of their truth or falsity), since the Shelby, Montana telephone directory contained separate listings for the two entities. Tunnell's representations did not concern the telephone directory. Instead, Tunnell informed the magistrate judge that each company's *letterhead* listed the same address and phone number, and that the Toole County Assessor's Office also listed identical information for the two businesses.

The amended complaint's final allegation is that Tunnell admitted in his warrant affidavit that many gas producers form limited partnerships for the legitimate purpose of converting the gas to a marketable condition for sale to end purchasers. The fact that Tunnell was aware of legitimate dealings, however, does not suggest that he knowingly lied to (or recklessly misled) the magistrate judge concerning the nature of the Branch Oil–Aloe Ventures relationship.

We therefore hold that the allegations in ¶ 17 of Branch's amended complaint fail to show that Tunnell knew or should have known he was making false statements to the magistrate judge, and that the amended complaint fails to satisfy *Branch I*'s heightened pleading standard.

## III

Having concluded that the amended complaint fails to satisfy the requirements of *Branch I*, we must consider Branch's argument that we should overrule that opinion in light of *Leatherman.* We agree with Branch that if his amended complaint is reviewed under the familiar standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), that pleading suffices for Rule 12(b)(6) purposes. We disagree, however, that we are free to revisit *Branch I* in light of *Leatherman.*

In *Leatherman,* the Court rejected the Fifth Circuit's heightened pleading standard in cases alleging municipal liability under § 1983. The case arose out of complaints filed against two municipalities for their officers' forcible entry into residences the officers suspected were fronts for drug-manufacturing operations. The district court and the Fifth Circuit, both applying the latter's heightened pleading standard in civil rights cases, held that the complaints should be dismissed. The Supreme Court reversed.

The Court found it "impossible to square the 'heightened pleading standard' applied by the Fifth Circuit ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163. The Court observed that Rule 9(b) imposes a requirement of particularity with respect to averments of fraud or mistake. Relying on the canon of statutory construction *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the Court determined

that a heightened pleading rule—at least in cases alleging municipal liability under § 1983—"must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.*

At the same time, the Court specifically reserved judgment on the question whether its "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Id.* at ——, 113 S.Ct. at 1162. The *Leatherman* defendants had defended the heightened pleading standard on the ground "that a more relaxed pleading requirement would subject municipalities to expensive and time consuming discovery in every § 1983 case, eviscerating their immunity from suit and disrupting municipal functions." *Id.* The Court rejected this argument, noting that municipalities—*unlike individuals* sued under § 1983—do *not* have immunity (either absolute or qualified) from suit. *Id.* (citing *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980)).

Because of the Court's caveat, we lack the authority to reconsider *Branch I.* "As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel." *United States v. Gay*, 967 F.2d 322, 327 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992). "An exception to this rule arises when an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *Id.* (quotation marks omitted).

Although *Leatherman* is closely on point, the Court expressly declined to make the extension necessary to undermine *Branch I*: The Court cordoned off the question whether a heightened pleading standard might be justified in an action against an individual officer. We also cannot say that the Court's qualified immunity jurisprudence would not call for application of the heightened pleading rule in such a case.[5] *Branch I* aligns us with the majority of other circuits in applying some form of a heightened pleading standard in qualified immunity cases. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir.1992); *Elliott v. Thomas*, 937 F.2d 338, 344–45 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 138 *and cert. denied,* —— U.S. ——, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992); *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th ·Cir.1990); *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 763 (4th Cir.1990); *Brown v. Frey*, 889 F.2d 159, 170 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990); *Martin v. Malhoyt*, 830 F.2d 237, 254 (D.C.Cir.1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Like *Branch I*, all of these cases predate *Leatherman.* The majority of a three-judge

---

**5.** The unanimous Court in *Leatherman* included one Justice who has expressly endorsed the heightened pleading standard in qualified immunity cases, and two Justices who joined an opinion calling for a pleading standard with bite. *See Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1795, 114 L.Ed:2d 277 (1991) (Kennedy, J., concurring):

> The heightened pleading standard is a necessary and appropriate accommodation between the state of mind component of malice and the objective test that prevails in qualified immunity analysis as a general matter. There is tension between the rationale of *Harlow [v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396] [(1982)] and the requirement of malice, and it seems to me that the heightened pleading requirement is the most workable

means to resolve it. The heightened pleading standard is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and departs also from the normal standard for summary judgment under Rule 56. But avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine, and it is no answer to say that the plaintiff has not yet had the opportunity to engage in discovery. The substantive defense of immunity controls.

(citation omitted); *id.,* 500 U.S. at ——, 111 S.Ct. at 1801 (Marshall, J., joined by Blackmun and Stevens, JJ., dissenting) ("[A] plaintiff pleading a *Bivens* claim that requires proof of the defendant's intent should be afforded [appropriately tailored] discovery whenever the plaintiff has gone beyond bare, conclusory allegations of unconstitutional purpose.").

panel of the District of Columbia Circuit recently concluded that *Leatherman* did not give it license to disturb that circuit's heightened pleading standard in qualified immunity cases. *Kimberlin v. Quinlan,* 6 F.3d 789, 794 n. 9 (D.C.Cir.1993). Although the Supreme Court's rationale—the *expressio unius* rule—would appear to apply in *any* case outside the fraud or mistake context in which federal courts have applied heightened pleading rules, *see id.* at 799, 804 (Edwards, J., dissenting), we agree with the District of Columbia Circuit that because the Court specifically refused to "address heightened pleading in individual capacity suits, our precedent requiring that standard in such suits remains the governing law of this circuit." *Id.* at 794 n. 9.

We are bound to follow *Branch I.* Doing so requires that we affirm the judgment of the district court.

**AFFIRMED.**