Dyan A. TRUESDELL, Plaintiff,

v.

SOUTHERN CALIFORNIA PERMA-
NENTE MEDICAL GROUP; and the
Hospital and Service Employees Inter-
national Union, Local 399, Defen-
dants.

No. CV 01–02337 ABC BQRX.

United States District Court,
C.D. California,
Western Division.

April 18, 2001.

Jerome Zamos, Jerome Zamos Law Offices, Woodland Hills, CA, for Dyan A Truesdell, plaintiff.

F Scott Page, Thomas R Kaufman, Seyfarth Shaw, Los Angeles, CA, for Southern California Permanente Medical Group, defendant.

James G Varga, Van Bourg Weinberg Roger & Rosenfeld, Los Angeles, CA, for Hospital and Service Employees International Union Local 399, defendant.

### ORDER RE: MOTION TO DISMISS FED. R. CIV. PRO. 12(B)(6)

COLLINS, District Judge.

This action arises out of Plaintiff's employment under the terms of a collective bargaining agreement ("CBA"), attempted termination of that employment, and subsequent grievance and arbitration proceeding. Plaintiff is dissatisfied with the procedures and the outcome of that arbitration, in which she was awarded reinstatement but no back pay. Defendants have filed the instant Motion to Dismiss. This Motion is appropriate for submission without oral argument. See Fed. R. Civ. Pro. 78; Local Rule 7.11. Accordingly, the noticed hearing date of April 23, 2001 is VACATED. Defendants' Motion to Dismiss is GRANTED. Plaintiff's hybrid claim for breach of CBA/duty of fair representation is hereby DISMISSED, with leave to amend. Plaintiff's "claim" for vacatur/review of the arbitration award is DISMISSED, with prejudice.

### I. BACKGROUND

Plaintiff DYAN TRUESDELL ("Plaintiff," or "Truesdell") is or was an employee of Defendant SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP (the "Medical Group") under a CBA negotiated with or by Defendant THE HOSPITAL AND SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 399 ("SEIU Local 399") (collectively, "Defendants"). Between April, 1996 and at least November 1, 1999, Plaintiff was employed on a part-time basis by the Medical Group as a licensed cytotechnologist. See Complaint ¶ 10; Exhibit B to Complaint ("Arbitration Decision") at 4.[1] Plaintiff was responsible for examining "PAP smear" slides to determine whether any abnormalities were found. See Arbitration Decision at 4. Plaintiff's employment was governed by a CBA between the Medical Group and SEIU Local 399 which became effective on June 19, 1996. See id.[2] Article XVIII of that CBA provides that the employer and the union agreed to resolve work-related disputes through a series of steps culminating in binding arbitration, a process throughout which SEIU Local 399 would retain control of employees' grievances. See Complaint ¶ 11; Exhibit A to Complaint ("CBA—Discipline & Arbitration") ¶¶ 1800–1839.

The Medical Group discharged Plaintiff on or about November 1, 1999 for allegedly unsatisfactory work performance. See Complaint ¶¶ 16–20; Arbitration Decision at 3. The Medical Group's asserted basis for termination was that the results of a federally-mandated five-year review of slides, that the Medical Group conducted in 1999, uncovered four slides that Plaintiff

---

1. For the instant Motion to Dismiss, the Court may consider any exhibits attached to the Complaint, and any documents whose contents are alleged therein or upon which the Complaint clearly relies. See Branch v. Tunnell, 14 F.3d 449, 453–54 (9th Cir.1994). In this case, the Court considers both Exhibit A to the Complaint, which is a copy of various provisions of the CBA between the Medical Group and SEIU Local 399, effective June 19, 1996, which govern discipline, grievance and/or arbitration procedure(s), and Exhibit B, the above-referenced decision of an arbitration panel (and its chair, Thomas Angelo) issued on October 19, 2000. See Exhibit A to Complaint ("CBA—Discipline & Arbitration"); Exhibit B to Complaint ("Arbitration Decision").

2. Plaintiff was employed initially (April 2, 1996) as "on-call" help. She became a part-time employee in April, 1997 (at which time she presumably came under the CBA). See Arbitration Decision at 4. Plaintiff is apparently still employed by the Medical Group.

interpreted as normal when they actually reflected high grade abnormalities. *See* Arbitration Decision at 3.[3] Plaintiff, through SEIU Local 399, grieved her discharge under the CBA and the matter proceeded to binding arbitration. A hearing was held by the arbitration panel on October 12, 2000. The employer and the union stipulated that the issues for resolution were whether Plaintiff "was terminated for just cause and, if not, what should the remedy be?" *Id.* at 4. A panel of two union and two employer representatives was unable to resolve the matter, so it was referred to the "neutral" Chair (Thomas Angelo), who issued the decision on October 19, 2000.

For purposes of the October 19, 2000 decision, the panel and the Chair relied on certain stipulations and documentary evidence. This included an employment history for Plaintiff which did not include any discipline prior to the November 1, 1999 termination. *See* Arbitration Decision at 5. However, a few months after she was initially hired on April 2, 1996, Plaintiff received "written counseling" on August 28, 1996 for indicating a slide was within normal limits when it contained abnormal cells (this was apparently picked up in the 10% review). She also received a second counseling memorandum on September 28,

1998 for misdiagnosing two slides that contained "many" sets of abnormalities. *See id.* at 5–6. The four misreadings cited in the termination notice, which were apparently discovered in the 1999 five-year review, were on slides dated September 25, 1996, April 11, 1997, October 13, 1997, and November 21, 1997. *See id.* at 5. These oversights had not yet been discovered (via 10% review) at the time that Plaintiff received, in January, 1998, a performance rating for calendar year 1997 which said she "meets requirements." *Id.; see id.* at 13 (noting January, 1998 review was conducted without knowledge of the four misread slides).

According to the arbitrator's decision, the 1999 federal review process covered 524 "within normal limits" slides. Of those, 46 had abnormal cells, and 9 indicated a "high-grade reading." *Id.* at 6. Of these nine, four were (mis)read by Plaintiff (in 1996 and 1997), and these four misreadings formed the basis for her termination. *See id.* Though these four misreadings were conceded for the arbitration, the union argued that Plaintiff was clearly improving, and that it was not appropriate for the Medical Group to rely on work done before she was given a chance to improve (i.e., errors discovered years la-

---

**3.** According to the arbitration panel's decision, following each examination of a slide, Plaintiff and other cytotechnologists at the Sherman Way Research Reference Laboratory where she worked on behalf of the Medical Group were supposed to complete a screening form which contained three areas "calling for the exercise of her professional judgment. First she was required to indicate whether the slide being reviewed was 'adequate' for purposes of review. Second she was to indicate whether any benign cellular changes were present, and finally she was to indicate her 'Final Diagnosis.' " Arbitration Decision at 2. This Final Diagnosis could be anywhere from "within normal limits" to various gradations of abnormality indicating presence of malig-

nancies. *See id.* A random 10% sampling of all of Plaintiff's work would take place for all findings that were "within normal limits." In addition, under federal law a "slide review procedure" can take place: when any patient has a positive PAP smear all negative slides for that patient from the prior five years are pulled and reviewed. "Thus, in addition to on-going work reviews an employee may be subject to a review of work extending back five years." *Id.* at 3. It was apparently during one (or a number of) such five-year review(s) that alleged misreadings by Plaintiff of PAP smear slides were discovered. *See id.* During the arbitration, the union conceded the four slides were misread. *See id.*

ter). The Medical Group argued that her termination was proper. *See id.* at 7.

The decision by Chair Thomas Angelo described the "most vexing problem" of relying on what would normally be "stale evidence" of her alleged misconduct. "This is because the action is based on events that took place up to 3 years prior to the termination, and ignores the Grievant's performance during the interim." *Id.* at 7. Noting an absence of proof of unsatisfactory work after September, 1998 (i.e., the written counseling Plaintiff received on September 28, 1998), the arbitrator noted that "the Employer is relying on the commission of errors in 1997, as well as a sort of statistical probability that the Grievant's performance difficulties continued into 1999. That is, since she made over half of the serious errors located out of the 1997 slide review, and given her counseling in 1998, she most probably continued her poor work habits into 1999." *Id.* at 8–9.

The arbitrator was "not persuaded" that the evidence satisfied a "just cause" standard. "While the Employer's reliance on historical events is sufficient to raise a question as to the competency of the Grievant's work, it cannot substitute for the substantial requirements of the just cause standard." *Id.* at 9. The arbitrator concluded the absence of any proof of substandard performance after September, 1998, despite ongoing 10% reviews, rendered the decision to terminate not supportable. The decision sustained Plaintiff's grievance, and found that the Medical Group had not shown adequate "just cause" for her termination. She was therefore reinstated as of the effective date of the decision. However, because the arbitrator felt it was necessary to impress upon Plaintiff the seriousness of the

mistakes she had made, and the "serious consequences" of those mistakes, reinstatement was ordered without back pay (for the period from November 1, 1999 to October 19, 2000). *See* Arbitration Decision at 10, 14–16.

Apparently dissatisfied with this outcome, Plaintiff filed this Complaint on March 12, 2001 (nearly five months after issuance of the arbitrator's decision). In her Complaint, Plaintiff alleges that she has suffered a violation under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). Specifically, she alleges that she is entitled to recover the lost wages denied her by the wrongful November 1, 1999 termination, and the misguided decision by the arbitrator reinstating her without back pay. *See* Complaint ¶¶ 5–7. Plaintiff claims that SEIU Local 399 breached a fiduciary duty that it owed to her by improperly representing her in the arbitration proceeding. *See id.* ¶¶ 14–15. She also attacks the propriety of the arbitration proceeding itself, and/or the remedy ordered by the Chair, as being contrary to provisions of the CBA. *See id.* ¶¶ 16–32.

On March 29, 2001, the Medical Group filed the instant Motion to Dismiss the Complaint, arguing that Plaintiff has failed to state a proper "hybrid" claim under Section 301, and that Plaintiff's claim that the arbitrator exceeded his authority is time-barred. Also on March 29, 2001, SEIU Local 399 filed a Notice of Joinder in the Motion filed by the Medical Group.[4] The Motion was noticed for a hearing on April 23, 2001. On April 6, 2001, Plaintiff filed her Opposition to the Motion. The Medical Group then filed a Reply on April 13, 2001. This closed the papers on the instant Motion to Dismiss.

---

**4.** Hereinafter, the Motion to Dismiss will be referred to as "the Motion" or "Defendants' Motion," and the combination of the Medical Group and SEIU Local 399 will be referred to simply as "Defendants."

## II. STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan*, 108 F.3d at 248 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Moreover, the complaint must be read in the light most favorable to the plaintiff. *See id.* However, the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir.1988).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, Tashima, and Wagstaffe, *Civil Procedure Before Trial* § 9:230 (2000). "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the *face of* the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief).

## III. ALLEGATIONS IN THE COMPLAINT

Plaintiff complains that the arbitrator (and the union) failed to properly interpret the terms of the CBA, and/or misapplied those terms in the course of her arbitration proceeding. On this basis, Plaintiff alleges two Claims for Relief: (1) for Declaratory Relief regarding a "proper" interpretation of the CBA (particularly ¶¶ 1835 and 1838 of that agreement); and (2) for Monetary Damages based on the back pay and benefits to which she claims entitlement. *See* Complaint ¶¶ 33–41. In essence, Plaintiff claims that the union did not properly present her case, and/or that

the arbitrator devised an improper remedy.

Specifically, Plaintiff points to two provisions of that part of the CBA governing discipline and arbitration proceedings, Paragraphs 1835 and 1838, the text of which provisions reads as follows:

> 1835 In the event the Employer disciplines or discharges an employee, the Employer will, at the request of the employee and/or Union furnish copies of any documents or written statements used by the Employer as a basis for the disciplinary action.

> 1838 Employer agrees to remove from each employee's personnel file discipline slips for incidents of unsatisfactory performance for which there has been no recurrence for one (1) year and they shall be returned to the employee as invalid in the future. However, if an employee who has a current Notice of Disciplinary Action (NDA) in file is off work for a period of one-hundred twenty (120) consecutive days or more, then upon the employee's return to work (excluding employees who have been terminated) the NDA will be extended until the employee has worked twelve (12) months with the Notice in file. To satisfy governmental record keeping requirements, copies of such notices shall be permanently maintained in a separate file ... to which supervisors shall not have access.

CBA—Discipline & Arbitration ¶¶ 1835, 1838. Plaintiff claims that both the Medical Group and SEIU Local 399 agreed to be bound by these provisions, but did not follow them in her termination/arbitration.

Pursuant to Paragraph 1835, Plaintiff apparently claims that the Medical Group refused to provide, and SEIU Local 399 failed to insist upon, certain documentation including: (1) "statistical records ... which would have demonstrated that no one employed [at the Sherman Way facility] had ever been terminated as a result of the types of errors" alleged to have been made by Plaintiff; (2) a memorandum dated October 27, 1999 by Medical Group management personnel allegedly indicating no basis for termination could be found; and/or (3) "Regularly published statistical analysis of the performance of all cytotechnologists" at the Sherman Way facility "which were posted in the lab" during the term of Plaintiff's employment. *See, e.g.,* Complaint ¶¶ 25, 27–30.

Plaintiff also claims that the Medical Group relied on evidence barred by Paragraph 1838 for her discharge. Plaintiff reads Paragraph 1838 as creating "an implied covenant ... that no person employed under the provisions of the agreement will be terminated or denied the right to receive wages and other benefits under the provisions of the contract as a result of any 'incidents of unsatisfactory performance for which there has been no recurrence for one (1) year.'" Complaint ¶ 20. In other words, Plaintiff claims Paragraph 1838 is an affirmative bar on consideration of any incidents of misconduct alleged to have taken place more than one year prior to discipline. She claims that because there is no evidence of any misconduct on her part in the one year preceding the November 1, 1999 termination, the Medical Group had no justifiable basis for seeking her discharge. *See id.* ¶¶ 20–22.

Plaintiff also alleges that SEIU Local 399 has failed to insist on a proper interpretation of that Paragraph to protect both Plaintiff and other similarly-situated employees. *See id.* ¶¶ 23–24, 30–31. In particular, Plaintiff complains that the union stipulated to use of "improper evidence" to be considered by the arbitrator (evidence that Plaintiff insists the arbitrator had "no jurisdiction to consider" per Paragraph

1838), consisting of "records of incidents of alleged poor performance which occurred over one (1) year prior to its November 1, 1999 termination of PLAINTIFF'S employment [which should have been removed from PLAINTIFF'S files under ¶ 1838 ... and not available for consideration by her supervisors] ..." *Id.* ¶¶ 31(a), 37(b).

Based on these alleged violations, Plaintiff seeks two forms of relief: a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202; and recovery of the wages and benefits she lost during the period of termination for which the arbitrator did not award her back pay.

The declaratory relief sought by Plaintiff consists of several parts. First, she seeks an endorsement of her interpretation of the two disputed provisions of the CBA: that the Medical Group has a duty to provide both an employee and SEIU Local 399 with "all documentation considered by anyone associated with" the Medical Group, even in the absence of any request from SEIU Local 399 (where the employee makes his or her own request), and that neither the Medical Group nor any person involved in the grievance proceeding (including the arbitrator) "may consider any substandard performance by an employee which occurs outside the time period referred to in ¶ 1838" of one year. Second, Plaintiff seeks a declaration that SEIU Local 399 had (and has) an affirmative duty to enforce these interpretations of these provisions. Third, Plaintiff seeks a declaration that an arbitrator "does not have jurisdiction to consider or rely upon any negative [or substandard] performance by a grieving employees [sic] which occurred outside the time period referred to in ¶ 1838 ..." Lastly, Plaintiff seeks a declaration that where an arbitrator acting under the CBA determines that there was no evidence of substandard performance during the time period allotted by ¶ 1838,

"he or she is obligated to order" not only reinstatement, but "full restoration of all wages ..." *Id.* ¶ 38.

Finally, Plaintiff's Second Claim for Relief seeks recovery of all lost wages and benefits for that period of time between discharge on November 1, 1999, and reinstatement on October 19, 2000. *See id.* ¶¶ 39–41. Plaintiff insists that the loss of wages and benefits "is a proximate result of the Medical Group's violation of her rights under the CBA", and SEIU Local 399's "breach of its fiduciary duty to her under both state and federal common law ..." *Id.* ¶ 40.

## IV. DISCUSSION

Plaintiff is attacking not only the initial decision to terminate her employment on November 1, 1999, but also the ensuing events up to and including the October 12, 2000 arbitration hearing and October 19, 2000 decision based on the evidence presented at that hearing. Thus, Plaintiff alleges that the Medical Group breached the CBA, that SEIU Local 399 breached its duty to ensure compliance therewith, and that the arbitrator exceeded his authority under the CBA and governing law.

### A. Plaintiff's "Hybrid" Claim—Duty of Fair Representation

■■■ The parties agree that Plaintiff's claim(s) against the Medical Group and SEIU Local 399 are a "hybrid" Section 301/breach of duty of fair representation claim. *See* Motion at 8; Opposition at 3, 10–14. To support such a claim, Plaintiff must plead facts showing both that the employer breached the CBA *and* that the union breached its duty of fair representation to her. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 47 L.Ed.2d

231 (1976) Such a claim is subject to the same six month statute of limitations period which applies to unfair labor practice charges. *See, e.g., DelCostello,* 462 U.S. at 169–72, 103 S.Ct. 2281.[5]

██ Plaintiff "must not only show that [her] discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union." *Hines,* 424 U.S. at 570–71, 96 S.Ct. 1048. Courts should take first the question of breach of the duty of fair representation, as a failure on this threshold may make consideration of the actual breach unnecessary. *See Bautista v. Pan American World Airlines, Inc.,* 828 F.2d 546, 551 (9th Cir.1987) (stating, in a parallel RLA case: "If an employee sues both his employer and his union in federal district court, the court must first examine the claim against the union."); *Zumbrun v. Delta Airlines,* Inc., 1996 WL 652718, *4 (C.D.Cal.1996).

██ The standard for breach of the duty of fair representation is restrictive: "A union breaches its duty of fair representation when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.'" *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 618 (9th Cir.1981) (quoting, *inter alia, Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). In other words, mere inattention to detail or lapses in judgment are insufficient. "A union's actions are arbitrary or discriminatory where it ignores or perfunctorily handles employee grievances or where its acts or omissions reflect reckless disregard for the

rights of the individual employee." *Id.* Further, mere allegations of union negligence cannot support a breach of the duty of fair representation claim. *See Franklin v. Southern Pacific Transportation Co.,* 593 F.2d 899, 901 (9th Cir.1979). Plaintiff must plead facts from which the Court can infer "hostility, arbitrariness, or bad faith in the union's representation of [her]." *Id.* In other words, it is not enough that the union's representation does not meet Plaintiff's expectations of what that representation of her entails. Plaintiff must be able to show arbitrary or discriminatory treatment.

██ The standard is especially restrictive where the alleged breach involves the exercise of judgment by union officials. "[W]e ask first whether the act in question involved the union's judgment, or whether it was 'procedural or ministerial.' If it is a union's judgment that is in question ... the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith. Arbitrariness alone would not be enough. Only when the challenged conduct was procedural or ministerial does arbitrariness become controlling." *Salinas v. Milne Truck Lines, Inc.,* 846 F.2d 568, 569 (9th Cir.1988) (alterations in original) (quoting *Moore v. Bechtel Power Corp.,* 840 F.2d 634, 636 (9th Cir.1988)). In particular, an allegation that a union failed to make a particular argument advanced by a grievant was considered and rejected by the *Salinas* court as a basis for a breach of the duty of fair representation claim. "This act plainly involved the union's judgment.... [Therefore,] Salinas could pre-

---

**5.** Plaintiff, somewhat misguidedly, proclaims the applicability of this six month limitations period, in response to Defendants' argument that Plaintiff's attack on the arbitration decision is subject to the shorter 100–day period provided for by California law. *See* Opposition at 3–4. However, Plaintiff misunderstands Defendants' argument. They do not contest

that Plaintiff's "hybrid" claim is timely under the six month statute of limitations (focusing instead on its failure to state a claim). Rather, Defendants argue that Plaintiff's challenge to the propriety of the arbitration *decision* is time-barred. This point will be discussed more specifically, below. *See infra* Part IV.B.

vail at trial 'only if the union's conduct was discriminatory or in bad faith.'" *Id.*[6]; *see Zumbrun,* 1996 WL 652718, *4 ("A union does not breach its DFR " 'simply because of an error in evaluating the merits of a grievance ... or in presenting the grievance at an arbitration hearing.'" ... [or] when it ... fails to present certain arguments ... Such errors by unions are not evidence of 'bad faith' or 'arbitrary representation' ... [but are], 'at most ... negligence.'") (citations omitted).

▮ In this case, Plaintiff has wholly failed to state a claim for breach of the duty of fair representation ("DFR"). First, Plaintiff's attempt to make out a breach of the CBA (and a consequent breach of the DFR) based on its reading of Paragraphs 1835 and 1838 is, at best, strained. Paragraph 1835 requires only that the Medical Group provide to the employee or union copies of "documents or written statements" which are "used by the Employer *as a basis for*" discipline. CBA—Discipline & Arbitration ¶ 1835 (emphasis added). None of the three allegedly "withheld" documents identified by Plaintiff (two forms of statistical analysis of cytotechnologists' error rates, and a letter from one supervisor to another allegedly *disclaiming* any basis for discipline) would appear to fit this definition. Plaintiff does not allege that any of these documents were a "basis for" her discharge.

▮ Similarly, Paragraph 1838 requires only that *where a Notice of Disciplinary Action has been placed in an employee's file,* that NDA will be removed if and when the employee goes a full year without a recurrence of the event de-

scribed in the NDA. *See* CBA—Discipline & Arbitration ¶ 1838 ("Employer *agrees to remove* from each employee's personnel file discipline slips for incidents of unsatisfactory performance *for which there has been no recurrence for one (1) year* and they shall be returned to the employee as invalid in the future.") (emphasis added). Plaintiff's contention that this language bars any *consideration* of substandard performance (either by the employer or by a subsequent arbitrator) which occurs more than one year prior to a disciplinary action appears contrary to the plain language thereof. The Court cannot, based on the present allegations, conclude that this Paragraph confers on any employee an affirmative right to what amounts to a one-year statute of limitations for any act of misconduct.

▮ Secondly, even if the Court determined that Plaintiff's reading of the CBA provisions were plausible, or even probable, absent some allegation of discrimination or bad faith by the union, a failure to make the argument advanced by Plaintiff could not on its own support a claim for breach of the DFR. The courts afford a wide berth to the exercise of a union's discretionary judgment, both in whether or not to pursue a grievance claim, and in *how* that claim is then pursued. "[T]he grievance process need not be error free—to constitute a breach of the duty of fair representation, more than a mere error of judgment must occur.... courts will interfere with union decisions about employee grievance proceedings only if a union shows reckless disregard for the rights of an employee.... Mere

---

**6.** The court explained: "In this case, the union may have rejected Salinas's interpretation of Article 46 as meritless. The union may have overlooked Salinas's interpretation of Article 46 entirely, or the union may have found Salinas's interpretation meritorious but failed to present that interpretation at his

hearing. Regardless, the union's conduct amounts to more than a procedural or ministerial act, and so any arbitrariness by the union would not breach the duty of fair representation." *Salinas,* 846 F.2d at 569 (citations omitted).

negligence on the part of the union does not constitute a breach ..." *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482 (9th Cir.1985).

Here, Plaintiff has essentially alleged that the union failed to advance an argument that Plaintiff contends they ought to have made. This is a wholly insufficient basis for a breach of DFR claim. SEIU Local 399 was not even under an absolute duty to bring Plaintiff's grievance *to* arbitration. Plaintiff cannot be heard to complain when it did so (and did so successfully) that it improperly exercised its judgment in determining which arguments to make on Plaintiff's behalf. This is particularly true when those arguments are so contrary to a plain reading of the CBA. In the absence of any allegation of some discriminatory or bad faith conduct by the union, Plaintiff may not state a "hybrid" Section 301/DFR claim. Accordingly, the Complaint is DISMISSED to the extent it states a Section 301/DFR claim. Plaintiff is granted leave to amend *only* if she can amend her Complaint to add allegations of discriminatory or bad faith conduct by the union.

### B. Plaintiff's Attack on the Arbitrator's Decision

Though indirectly, Plaintiff also seeks to invalidate and/or to overturn the decision of the arbitrator that she is not entitled to recover lost wages and benefits for that period stretching from her termination on November 1, 1999 to her reinstatement effective October 19, 2000. Plaintiff seeks a declaratory judgment (and money damages based thereon) that the arbitrator in this case exceeded its authority by considering evidence of misconduct more than one year prior to the termination date, and a holding that, based upon the finding of lack of "just cause" for termination, the arbitrator *had to* award back pay, and had no discretion in fashioning a remedy to deny this relief.

As Defendants argue, Plaintiff's claim that the arbitrator erred is most like a claim for vacatur of the arbitration award. *See United Brotherhood of Carpenters and Joiners of America, Local 1020 AFL–CIO v. FMC Corp.*, 724 F.2d 815, 817 (9th Cir.1984); *Sheet Metal Workers' Int'l Assoc., Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 482–83 (9th Cir.1983); *Local 1020 of the United Brotherhood of Carpenters and Joiners of America v. FMC Corp.*, 658 F.2d 1285, 1290 (9th Cir.1981); *see also Sheet Metal Workers Int'l Assoc., Local 150 v. Air Systems Engineering, Inc.*, 831 F.2d 1509, 1514 (9th Cir.1987); *Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356–57 (9th Cir.1983). When an arbitration takes place in California, any claim for vacatur falls under California's 100–day limitations period for challenging arbitration decision. *See San Diego County District Council of Carpenters v. Cory*, 685 F.2d 1137, 1142 (9th Cir.1982). Therefore, because Plaintiff did not file the instant Complaint until well after 100 days past the issuance of the October 19, 2000 decision by the arbitrator, Plaintiff's vacatur "claim" appears time-barred.

Plaintiff insists that she has not *stated* a claim for vacatur, and that she is instead seeking merely to vindicate her rights under Section 301 (or the duty of fair representation implied in the NLRA), such that her attack on the arbitrator's decision is timely under the six month statute of limitations period for "hybrid" causes of action. *See* Opposition at 3–5. However, as Defendants point out, Plaintiff is attacking the arbitrator's exercise of judgment *directly,* not merely asserting that the arbitrator was not *presented* with proper evidence or argument. Because Plaintiff seeks to substitute her own (or this Court's) judgment for that of the arbitrator, this action seems most similar to an action for vacatur of an arbitration award.

Regardless, even if the Court assumes that Plaintiff's "claim" as to the invalidity of the arbitration award is timely, there is still no colorable basis for Plaintiff to sustain such a claim. This is because of the extraordinary deference to which decisions by labor arbitrators and arbitration boards are entitled. "[J]udicial review of an arbitration award is both limited and highly deferential.... As long as the award 'draws its essence' from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." *Sheet Metal Workers' Int'l Assoc. Local Union No. 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir.1996); *see also Assoc. of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1089–91 (9th Cir.2000); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Int'l Brotherhood of Teamsters*, 989 F.2d 1077, 1081–82 (9th Cir.1993). This same deference applies to a particular *remedy* chosen by the arbitrator. *See, e.g., Rexam Graphic*, 221 F.3d at 1091; *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38–41, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

In this case, Plaintiff essentially claims that the arbitrator erred by (1) reading the CBA to permit consideration of incidents of substandard performance occurring prior to October 31, 1998 and (2) by declining to award back pay despite a finding that the Medical Group lacked "just cause" for terminating Plaintiff. These allegations are plainly insufficient to sustain an attack on the arbitration decision. As the Court has indicated, Plaintiff's proffered interpretation of Paragraph 1838 is far from "plausible." Conversely, the arbitrator's decision to consider pre–1998 incidents is not only a "plausible" read of the CBA, it is the *most* probable reading thereof. Given that an arbitrator's reading "need not be the *only* possible interpretation" of a CBA, and that

"when a CBA can be read in a manner consistent with the arbitrator's interpretation, it is not the job of the courts to second-guess arbitrators[,]" this Court declines to do so. *See Rexam Graphic*, 221 F.3d at 1091 (emphasis in original). Therefore, the Court concludes that Plaintiff cannot state a claim on this basis.

Similarly, "[a]rbitrators are granted wide latitude to fashion remedies appropriate to the situations they confront." *Id.* "[T]his court ... [has previously noted that the Supreme Court, in the *Steelworkers* trilogy,] was equally categorical in its treatment of judicial second-guessing of the remedy formulated by an arbitrator, stressing the arbitrator's 'need ... for flexibility ...' and the deference to be afforded the arbitrator's use of 'his informed judgment ... to reach a fair solution ...'" *Phoenix Newspapers*, 989 F.2d at 1082 (citations and internal quotations omitted). Thus, there is no legal basis for Plaintiff to argue that the arbitrator, upon a finding of no "just cause" for termination, was *required* to award Plaintiff not only reinstatement, but also all back pay.

Accordingly, Plaintiff's Complaint, to the extent that it seeks to have this Court determine that the arbitrator either exceeded or improvidently exercised his jurisdiction under the CBA, is DISMISSED, with prejudice. Plaintiff has not and cannot state a claim to this basis for relief. Plaintiff's claim is either time-barred, or simply fails to assert a colorable cause of action. Therefore, Plaintiff is not entitled to continue to assert rights decided in arbitration.

## C. The Effect on Plaintiff's Stated Claims for Relief

Because the Court has concluded that Plaintiff has not presently stated a Section 301/DFR claim, and *may not* state a claim

based on an alleged impropriety in the arbitrator's decision, all of the bases for Plaintiff's two Claims for Relief have also dissipated. The First Claim for Relief seeks declaratory relief to which Plaintiff is not entitled, both because she has failed to state a claim upon which the Court might premise that declaration, and because in any case she is not entitled to the relief she seeks as to the arbitration decision. *See United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Conkle v. Jeong,* 73 F.3d 909, 915 (9th Cir.1995).

Accordingly, the Court hereby DISMISSES both the First and Second Claims for Relief, with leave to amend *only* to the extent that they may re-state Plaintiff's Section 301/DFR claim, and *only* if Plaintiff may truthfully support that claim with allegations of discriminatory or bad faith conduct by SEIU Local 399. Plaintiff may *not* amend her Claims to attack the specific decision entered by the arbitrator, as Plaintiff's termination grievance was arbitrated pursuant to the CBA, and the arbitrator's decision is entitled to the utmost deference.

### V. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to declaratory relief as to her proposed interpretation of the CBA (¶¶ 1835 and 1838). That interpretation is contrary to the plain language of the agreement, and it was in any case within the discretion of SEIU Local 399 as to whether to pursue the arguments now proposed by Plaintiff in the October 12, 1999 arbitration hearing. In the absence of allegations of discriminatory or bad faith conduct by SEIU Local 399, Plaintiff cannot sustain a "hybrid"

Section 301/DFR claim. Nor may Plaintiff, under any circumstances, sustain a claim that the arbitrator improperly failed to award her accrued back pay. Choice of remedy is committed to the discretion of the arbitrator.

Accordingly, the Court DISMISSES Plaintiff's Complaint, to the extent that it seeks to state a Section 301/DFR claim, with leave to amend. Plaintiff may file a First Amended Complaint, by no later than **May 15, 2001,**[7] *only* if Plaintiff may plausibly allege that SEIU Local 399 engaged in discriminatory or bad faith conduct in the pursuit of her termination grievance. The Court also DISMISSES the Complaint, to the extent it seeks vacatur of the arbitration award, with prejudice. Plaintiff may *not* amend the Complaint to augment this "claim."

---

7. Failure to file a First Amended Complaint by this deadline will result in a dismissal of the entire case, with prejudice.