Jeffrey J. ZELLA and Ross Crystal, individuals, Plaintiffs,

v.

The E.W. SCRIPPS COMPANY, an Ohio Corporation, Scripps Networks, Inc., a Delaware corporation, Television Food Network G.P., a general partnership, Harpo Productions, Inc., an Illinois corporation, King World Productions, Inc., a Delaware Corporation, CBS Television Distribution Group, a unit of CBS Corporation, which is a Delaware corporation, Watch Entertainment, Inc., a New York Corporation, Defendants.

Case No. CV 06–7055 ABC (JTLx).

United States District Court, C.D. California.

Dec. 18, 2007.

Stanton L. Stein, Esq., Marcia J. Harris, Esq., Bridgette M. Taylor, Esq., Frieda A. Taylor, Esq., Dreir Stein & Kahan, LLP, Santa Monica, CA, for Plaintiffs, Jeffrey J. Zella and Ross Crystal.

Daniel Scott Schecter, Esq., Michelle J. Correll, Esq., Latham & Watkins, LLP, Los Angeles, CA, for Defendants The E.W. Scripps Company, Scripps Networks, LLC; and Television Food Network G.P.

Lee S. Brenner, Allison S. Rohrer and Tami Kameda, White O'Connor Curry

LLP, Los Angeles, CA, for Defendants CBS Television Distribution, King World Productions, Inc., and Harpo Productions, Inc.

### ORDER RE: CBS DEFENDANTS' MOTION TO DISMISS

AUDREY B. COLLINS, District Judge.

Pending before the Court is Defendants CBS Television Distribution, King World Productions, Inc. and Harpo Productions, Inc.'s (collectively the "CBS Defendants'") Motion to Dismiss Plaintiffs' Jeffery J. Zella and Ross Crystal ("Plaintiffs'") First Amended Complaint, filed on August 24, 2007. Plaintiffs opposed on December 3, 2007, and the CBS Defendants replied on December 10, 2007. The Court finds this matter appropriate for resolution without oral argument and VACATES the January 7, 2008 hearing date. *See* Fed.R.Civ.P. 78; Local Rule 7–15. The Court GRANTS Defendants' motion and DISMISSES the CBS Defendants from this case as discussed below.

### I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs work in the television and radio media. (Compl. ¶ 25.) In November 2001, Plaintiff Crystal contacted Judy Girard, then the president of the Food Network, about a television show Plaintiffs had created. (*Id.* ¶ 26.) Plaintiff Crystal sent Ms. Girard a letter on November 30, 2001, submitting for her consideration a copy of a one-page treatment and three-page script for a television show entitled *Showbiz Chefs* (the "Work"). (*Id.* ¶ 28.) Plaintiffs obtained a federal copyright registration for this treatment on December 10, 2001. (*Id.* ¶ 29, Ex. B.) On December 13, 2001, Ms. Girard rejected Plaintiffs' idea, but did not return the copy of the treatment and script to them. (*Id.* ¶ 30, Ex. C.) On November 5, 2004, the Food Network launched a show called *Inside Dish*, with host Rachael Ray. (*Id.* ¶ 34.)[1] Plaintiffs believe that the success of this show sparked interest in creating a syndicated talk show called *Rachael Ray*. (*Id.* ¶ 44.) The show *Rachael Ray* is a one-hour show distributed by the CBS Defendants that has become a "monster hit" according to Plaintiffs. (*Id.* ¶ 45.)

Plaintiffs' treatment of *Showbiz Chefs* indicates that it is

a 30–minute interview/cooking show featuring celebrities cooking their favorite dishes in their own kitchens. In addition to sharing their favorite recipes, celebrity guests will open their homes to the viewer providing a glimpse into their lifestyles. Along the way, we will gain insights into their latest projects—books, films, television series, etc.

*Showbiz Chefs* will be filmed on location in and around the Los Angeles area and will feature a host/interviewer who will participate with the celebrity guest in the cooking experience. A typical episode may include a quick tour of the home/grounds—a few surprises (such as appearances of another celebrity or family member who may not necessarily be scheduled to appear on the episode)—or a clandestine grocery shopping trip to the local market with the celebrity guest. We inevitably adjourn to the kitchen where the celebrity (with the help of the host turned inept but well meaning sous chef) prepares his/her favorite recipe. The mood is relaxed, informal and fun. We discuss the specific ingredients as well as the history (perhaps a family story) behind the recipe.

*Showbiz Chefs* final segment will feature an interview with the celebrity about his/her latest project in a comfortable setting (somewhere on the grounds)

---

1. *Inside Dish* is not the subject of the instant motion.

while the host and celebrity enjoy the celebrity-prepared dish. (Compl. ¶ 35, Ex. A.) Plaintiffs' also submitted to the Food Network a three-page sample script for an episode that hypothetically includes Ray Romano. (Compl., Ex. A.)

*Rachael Ray* is a talk-style show that featured some episodes with celebrities. For example, Plaintiffs' Complaint mentions: (1) Episode 1161R with Chris Meloni in Ray's kitchen making Bloody Mary Burgers and discussing Meloni's role on *Law and Order: Special Victims Unit;* (2) Episode 1143R featuring former President Bill Clinton discussing childhood obesity as he and Ray prepare a meal in Ray's kitchen; (3) Episode 1154 with cook Paula Deen, the star of her own show on the Food Network and the author of a number of cookbooks, featuring Deen and Ray preparing Mother's Day meals; (4) Episode 1153R with late-night talk show host Craig Ferguson, "comparing notes" on Scottish cuisine; and (5) Episode 1002 with Oprah Winfrey in which they prepare pizza and discuss current projects. (*Id.* ¶ 46.) Plaintiffs also point to three additional episodes in their opposition to the CBS Defendants' motion: (1) Episode 1007 showing Dr. Phil cooking in his home, without Ray, and then cooking with Ray on the set; (2) Episode 2030 showing chef Bobby Flay in his own kitchen without Ray, then with Ray on set, although they do not cook; and (3) Episode 2048 showing chef Nigella Lawson in her own kitchen without Ray, and then cooking on set with Ray. (Compl. ¶ 46; Declaration of Lee S. Brenner ("Brenner Decl.") ¶¶ 4–10, Exs. A–G; Declaration of Allison Rohrer ("Rohrer Decl.") ¶¶ 3–8, Exs. A–C.)

Plaintiffs allege that the elements contained in *Showbiz Chefs* are protectable, as well as "the expressive manner in which Plaintiffs selected, arranged, and combined the protectable and non-protectable elements of the Work." (Compl. ¶ 51.) Plaintiffs allege that the CBS Defendants had access to Plaintiffs' Work and that *Rachael Ray* is substantially similar and infringing, (*Id.* ¶¶ 51, 52, 54, 55.) The CBS Defendants have moved to dismiss Plaintiffs' first claim (and only claim) against them for copyright infringement, arguing that, as a matter of law, *Showbiz Chefs* does not contain protectable elements and it is not substantially similar to *Rachael Ray*.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir.1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' ") In other words, a complaint need not contain detailed factual allegations, but it must allege facts sufficient to raise a right to relief that rises above the level of mere speculation and is plausible on its face. *See Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 1969, 167 L.Ed.2d 929 (2007). A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast as factual allegations. *See Western Mining Council v. Watt,* 643 F.2d 618, 624

(9th Cir.1981); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968).

■ In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.*, those facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *See Mir, M.D. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988).

### III. THE CBS DEFENDANTS' EVIDENCE AND REQUEST FOR JUDICIAL NOTICE

#### A. Copies of Episodes of *Rachael Ray*

■ Generally, in ruling on a 12(b)(6) motion, a court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454.

The CBS Defendants submit DVD copies of each of the *Rachael Ray* episodes to which Plaintiffs refer in their Complaint, as well as the episodes mentioned in Plaintiffs' Opposition, which are collectively Episodes 1161R, 1143R, 1154, 1153R, 1002, 1007, 2030, and 2048. (*See* Brenner Decl. ¶¶ 4–10, Exs. A–G; Rohrer Decl. ¶¶ 3–8, Exs. A–C.) Defendants also submit DVD copies of Episodes 1006 and 1012 as examples of episodes in which no celebrities appear. (Brenner Decl. ¶¶ 4–5, Exs. A–B.)

Plaintiffs allege that the show *Rachael Ray*, as an ongoing series, infringes on Plaintiffs' *Showbiz Chefs*, so the Court may properly consider the content of the show as a documentary facts "whose contents are alleged in [the] complaint," *Branch*, 14 F.3d at 454.[2] Plaintiffs do not object to either the authenticity of the copies of the episodes submitted by the CBS Defendants, or to the accuracy of the content of the episodes. Moreover, the Court finds that it may properly consider not only the episodes to which Plaintiffs specifically refer in the Complaint (Episodes 1161R, 1143R, 1154, 1153R, and 1002), but also the episodes submitted by the CBS Defendants to demonstrate episodes without celebrities (Episodes 1006 and 1012) and episodes to which Plaintiffs referred in their opposition brief (Episodes 1007, 2030, and 2048).

#### B. Judicial Notice of Evidence of Other Cooking Shows

■ On a motion to dismiss, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *See Mir, M.D. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988). Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and

---

**2.** The "content" of the ongoing *Rachael Ray* show are its episodes, which the Court may properly consider under the rule in *Branch*. Plaintiffs concede that the episodes provide the infringing content by citing specific episodes in their Complaint as examples of infringement. (Compl. ¶¶ 45–46.)

ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). In the context of copyright claims, the Court may take judicial notice of generic elements of creative works. *See, e.g., Walker v. Time Life Films, Inc.*, 615 F.Supp. 430, 438 (S.D.N.Y.1985) (taking judicial notice that "members of the New York Police Department are often portrayed as Irish, smokers, drinkers, and third or fourth generation police officers"); *Willis v. Home Box Office*, 2001 WL 1352916, at *2 (S.D.N.Y.2001) ("It does not strain the concept of judicial notice to observe that books, movies and television series are full of such unethical men and women in a variety of businesses [.]").

■ The CBS Defendants ask the Court to take judicial notice that the following elements of a television show are common and prevalent in public works: (a) a host; (b) guest celebrities, (c) an interview; and (d) a cooking segment. (Request for Judicial Notice ("RJN") at 1:7–13.) The Court grants this request because these elements are generally known and can be verified simply by watching television for any length of time. Plaintiffs cannot reasonably question the existence or accuracy of these generic elements and, in fact, they concede that the Court "may take judicial notice of the fact that there are and have been numerous TV cooking shows and that TV talk show hosts have frequently involved celebrity guest[s] in cooking." (Opp'n at 13:7–9.)

The CBS Defendants also ask the Court to judicially notice various specific shows that contain these elements. (*Id.* at 3 n. 2, Ex. A.) The Court denies this request, however. These shows are not commonly known within this District, nor can their accuracy be verified by the Court, especially since many of them are several years old. Moreover, while Plaintiffs cannot reasonably dispute the generic talk show and cooking show elements of these shows (since one need only watch them to verify that fact), the Court cannot determine whether these shows were ever aired so as to contribute to the commonplace character of the generic show elements.[3] In any event, for the purposes of determining whether *Showbiz Chefs* contains protectable elements, the Court need not judicially notice any specific shows containing these generic talk show and cooking show elements because it has judicially noticed the generic character of the elements themselves. Therefore, the Court declines to consider the content of Exhibit A to the CBS Defendants' Request for Judicial Notice.[4]

---

**3.** The CBS Defendants' citations to contrary authority does not persuade the Court to rule otherwise. *See, e.g., Sobhani v. @radical.media Inc.*, 257 F.Supp.2d 1234, 1235–36 n. 1 (C.D.Cal.2003) (judicially noticing the film *Castaway* and commercials for the fast food chain Jack–in–the–Box); *Felix the Cat Prods. Inc. v. New Line Cinema Corp.*, 54 U.S.P.Q.2d 1856, 1857 (C.D.Cal.2000) (judicially noticing the film *Pleasantville* ); *Twentieth Century Fox Film Corp. v. Marvel Ents.*, 155 F.Supp.2d 1, 41 n. 71 (S.D.N.Y.2001) (judicially noticing the film *Star Wars* ). In *Sobhani*, the specific content of the film *Cast Away* was noticed because the commercials at issue specifically parodied the film. 257 F.Supp.2d at 1235–36 n. 1. In *Felix the Cat*, the court noticed the film *Pleasantville* because it was at issue in

that trademark case. 54 U.S.P.Q.2d at 1857. In *Marvel*, the court noticed the film *Star Wars* as an unquestionable representation of the generic storyline of a mentor-mentee relationship in science fiction, even though the court could have simply noticed the generic aspects of the mentor-mentee relationship without resorting to noticing a specific film in which those elements were presented. 155 F.Supp.2d at 41 n. 71. Here, the Court finds it improper and unnecessary to notice specific shows embodying generic talk show and cooking show elements.

**4.** For these same reasons, the Court also declines to notice Exhibits B, C, D, E, F, G, and H attached to the CBS Defendants' Request

## IV. ANALYSIS

The CBS Defendants move to dismiss the Complaint against them because, as a matter of law, *Showbiz Chefs* contains no protectable elements, and there is no substantial similarity between it and *Rachael Ray*. Plaintiffs oppose on two grounds: (1) the Ninth Circuit does not permit the Court to decide substantial similarity on a motion to dismiss because not all 150 *Rachael Ray* episodes are before the Court; and (2) in any event, *Rachael Ray* is substantially similar to *Showbiz Chefs*, creating a factual issue that cannot be decided on a motion to dismiss. The Court finds that *Showbiz Chefs* and *Rachael Ray* are properly before the Court and the Court can assess substantial similarity as a matter of law. Moreover, the Court holds that *Showbiz Chefs* and *Rachael Ray* are not substantially similar as a matter of law and dismisses Plaintiffs' claim against the CBS Defendants with prejudice.

### A. The Court May Assess Copyright Infringement as a Matter of Law on the CBS Defendants' Motion to Dismiss.

██ Courts have the power to dismiss complaints that either lack a cognizable legal theory or fail to allege sufficient facts to establish the elements of a valid claim for relief. *Balistreri*, 901 F.2d at 699. Plaintiffs have pointed to no law suggesting the a court *lacks* this power in the context of copyright infringement claims.

In contrast, the Ninth Circuit has noted that "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir.1945) (specifically approving of the district court's dismissal of a copyright complaint by comparing the two works that were part of the record). For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss). *See, e.g., Rodriguez v. Casa Salsa Restaurant*, 260 F.Supp.2d 413, 414 (D.P.R.2003) (motion to dismiss); *Cano v. World of Difference Institute*, 1996 WL 371064, at *12 (N.D.Cal. 1996) (motion for judgment on pleadings) [5]; *Lake v. Columbia Broad. Sys., Inc.*, 140 F.Supp. 707, 708 (S.D.Cal.1956) (noting that "upon this motion to dismiss the Court may assume validity of the copyright and, comparing the literary products incorporated into the complaint, determine as a matter of law whether or not the copyright has been infringed," and dismissing complaint); *Nelson v. PRN Prods.*, 873 F.2d 1141, 1143–44 (8th Cir. 1989) (affirming dismissal, stating that "[t]he trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting de-

for Judicial Notice, and Exhibit A attached to the CBS Defendants' Notice of Lodging, as these exhibits also purport to evidence the commonplace and generic nature of the talk show and cooking show elements.

5. Plaintiffs attempt to discount the CBS Defendants' reliance on this case because it was a motion for judgment on the pleadings, not a motion to dismiss. However, the legal standard for these motions is identical, the only difference being the stage in the case at which they are brought. *See Qwest Commc'ns Corp.*

*v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D.Cal.2002) ("Rules 12(b)(6) and 12(c) are substantially identical; both permit challenges to the legal sufficiency of the opposing party's pleadings."); *Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094, 1097 (N.D.Cal.2005) ("Rules 12(b)(6) and 12(c) are substantially identical.... Under either provision, a court must determine whether the facts alleged in the complaint, to be taken for these purposes as true, entitle the plaintiff to a legal remedy.").

fendants' motion to dismiss" because both works were before the court); *Bell v. Blaze Magazine*, 2001 WL 262718, at *3 (S.D.N.Y.2001) ("If the court determines that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement.").

Recently, a court in the Northern District of California found no obstacle to addressing substantial similarity as a matter of law:

> [P]laintiffs make much of the procedural argument that decisions as to copyright infringement—and in particular, substantial similarity issues—are not proper on 12(c) motions for judgment on the pleadings. Plaintiffs are correct that many times, the issue of substantial similarity is not amenable to resolution without a trial.... However, summary judgment may be granted' if the evidence in the record, combined with every inference reasonably drawn in favor of the non-moving party, demonstrates that no reasonable jury could find substantial similarity.... It follows, therefore, that judgment on the pleadings may be granted where the facts asserted by the non-moving party in its pleadings—including the attached works themselves—and all reasonable inferences from those facts, show the absence of substantial similarity.

*Identity Arts v. Best Buy Ent. Servs. Inc.*, 2007 WL 1149155, at *5 (N.D.Cal.2007). Therefore, "[i]f after examining the works themselves, this Court determines that there is no substantial similarity, then the plaintiff here can prove no facts in support

of his claim which would entitle him to relief—the standard for dismissal under Rule 12(b)(6)." *Boyle v. Stephens, Inc.*, 1998 WL 80175, at *4 (S.D.N.Y.1998) ("A court may, therefore, dismiss a copyright infringement claim on a 12(b)(6) motion if it concludes that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the works."). This Court agrees with this analysis and finds that it may properly address the merits of the CBS Defendants' motion.

■ Plaintiffs do not necessarily challenge the Court's power to rule on the CBS Defendants' motion to dismiss. Rather, they claim that, because the Court does not have all 150 episodes before it, the above authorities are inapplicable and the Court cannot assess substantial similarity on a motion to dismiss. The Court rejects this contention. Plaintiffs concede that the Court may consider documents incorporated by reference into a complaint. *Branch*, 14 F.3d at 454; *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998), *superseded on other ground by* 28 U.S.C. § 1453(b). Moreover, Ninth Circuit law permits the Court to consider documents not specifically incorporated by reference if the "plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005). This rule serves a critical policy interest in "preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706.[6]

---

**6.** The Eleventh Circuit has explained the rationale behind the Ninth Circuit's "incorporation by reference" doctrine as follows:

> [T]he rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to a complaint, the defendant may so attach the document, and

Plaintiffs' speculation that some episodes of *Rachael Ray* not before the Court may contain infringing content does not defeat the CBS Defendants' motion. First, Plaintiffs claim they have viewed "many, but not all" of those episodes. If true, as masters of their Complaint, Plaintiffs must allege the best facts for their case. Presumably, Plaintiffs have done so by alleging the content of the episodes they believe most substantially resemble *Showbiz Chefs*, and have even augmented that showing with three additional episodes to which they refer in their opposition brief. That they now suggest that the Court review every episode to save their claims would waste substantial judicial resources undertaking a task Plaintiffs should have undertaken themselves. The Court will *not* perform Plaintiffs' work for them and review all 150 episodes to select those which infringe on Plaintiffs' copyrights.

Plaintiffs cite no authority that the Court may not base its ruling on the eight episodes presented to it. In fact, in *Funky Films, Inc. v. Time Warner Entertainment Co.*, the Ninth Circuit considered a copyright infringement claim involving the television show *Six Feet Under*. 462 F.3d 1072 (9th Cir.2006). The Court affirmed summary judgment on the issue of substantial similarity between the plaintiff's work and the *first three* episodes of *Six Feet Under*, even though the plaintiff's claim involved the entire series. *Id.* at 1076. As in *Funky Films*, the Court need not look at all 150 episodes of *Rachael Ray* to determine whether the show is substantially similar to Plaintiffs' one-page treatment and three-page script for *Showbiz Chefs*.

The policy concerns here are particularly acute because Plaintiffs allege that an entire show—made up of individual episodes—infringes on their copyright. Finding that the Court must have all episodes before it to rule on a motion to dismiss would essentially give Plaintiffs a free pass to the summary judgment stage. In other words, future plaintiffs alleging copyright infringement in ongoing works (i.e., book series or television series), could evade dismissal simply by alleging infringement from common elements by citing only a handful of specific examples in the Complaint. The decision in *Funky Films* implicitly precluded this result. The Court is satisfied that the eight episodes submitted by Defendants accurately reflect the content of the *Rachael Ray* show sufficiently to rule on the CBS Defendants' motion.

**B. Plaintiffs Have Failed to State a Claim for Copyright Infringement Over *Rachael Ray*.**

■ To state a claim for copyright infringement, Plaintiffs must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).[7] The second prong—at issue here—requires Plaintiffs to allege that "the infringer had access to plaintiff's copyrighted work and that the works at

therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment. In short, the theory is that such a document is not "outside the pleadings," and thus it may be considered at the

12(b)(6) stage without a transformation into the summary judgment posture[.]
*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n. 16 (11th Cir.1999).

7. The CBS Defendants do not challenge Plaintiffs' allegations that they own a valid copyright in *Showbiz Chefs*.

issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.,* 297 F.3d 815, 822 (9th Cir. 2002).

Here, the CBS Defendants do not meaningfully challenge Plaintiffs' allegations of access because, even if access is present, Plaintiffs cannot state a claim if substantial similarity is lacking. *See, e.g., Krofft Tele. Prods. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir.1977) ("No amount of proof of access will suffice to show copying if there are no similarities."), *superseded on other ground by* 17 U.S.C. § 504(b); *Funky Films,* 462 F.3d at 1082 (quoting same). Even if a defendant concedes use of a plaintiff's work, the copyright claim still fails absent substantial similarity. *See, e.g., BensBargains.net, LLC v. XPBargains.com,* 2007 WL 2385092, at *3 (S.D.Cal.2007) (holding that "Plaintiff must prove the existence of a triable issue of material fact with respect to substantial similarity, regardless of how strong its evidence is that Defendants *in fact* copied . . . ." (emphasis in orig.)); *see also Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir. 1989) ("A finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis, has been made only when the defendant has engaged in a virtual duplication of a plaintiff's entire work.").

█ To assess substantial similarity as a matter of law, the Court must apply the objective "extrinsic test." *Funky Films,* 462 F.3d at 1077.[8] The extrinsic test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works." *Id.* (quotation marks and citation omitted). "In applying the extrinsic test, this court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* (quotation marks and citation omitted).

### 1. The Generic Elements of a Talk/Cooking Show Are Not Protectable.

In applying the extrinsic test, the Court "must take care to inquire only whether the *protectable elements, standing alone,* are substantially similar." *Funky Films,* 462 F.3d at 1077 (quoting *Cavalier,* 297 F.3d at 822) (emphasis in original). This requires the Court to "filter out and disregard the non-protectable elements in making [the] substantial similarity determination." *Id.* The protectable elements must demonstrate "not just 'similarity,' but 'substantial similarity,' and it must be measured at the level of the concrete 'elements' of each work, rather than at the level of the basic 'idea,' or 'story' that it conveys." *Idema v. Dreamworks, Inc.,* 162 F.Supp.2d 1129, 1179 (C.D.Cal.2001).

█ Plaintiffs here do not claim that the individual generic elements of cooking shows and talk shows—i.e., a host, guest celebrities, an interview, and a cooking segment—are protectable elements of *Showbiz Chefs.* Nor could they, since "[n]o one can own the basic idea for a story. General plot ideas are not protect-

---

**8.** The substantial similarity inquiry generally requires the application of both an "extrinsic test" and "intrinsic test." *Funky Films,* 462 F.3d at 1077. Only the extrinsic test is assessed prior to a jury trial (i.e., in a motion to dismiss or on summary judgment) because "the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id.* However, "a 'plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests.'" *Id.* (quoting *Kouf v. Walt Disney Pictures & Tele.,* 16 F.3d 1042, 1045 (9th Cir.1994)).

ed by copyright law; they remain forever the common property of artistic mankind." *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir.1985). In the context of fictional plot lines, courts have declined protection of ideas far more developed than Plaintiffs' one-page treatment and three-page script for *Showbiz Chefs. See, e.g., Funky Films,* 462 F.3d at 1081 (finding no protection for similar plots involving "the family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business."); *Kouf v. Walt Disney Pictures & Tele.,* 16 F.3d 1042, 1044–45 (9th Cir.1994) (finding no protection for similar plots of shrunken kids and the "life struggle of kids fighting insurmountable dangers"); *Berkic,* 761 F.2d at 1293 (finding no protection for similar plots of "criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants" and the general story of the "adventures of a young professional who courageously investigates and finally exposes, the criminal organization.").

Plaintiffs' unscripted program does not alter this analysis. For example, in *Bethea v. Burnett,* the court reviewed the two "plots" of the reality-based shows *C.E.O.* and *The Apprentice.* 2005 WL 1720631, at *11 (C.D.Cal.2005). The Court concluded that

> [a]t the most abstract level, or at the level of "ideas," there is some similarity between *C.E.O.* and *The Apprentice.* For example, Plaintiffs claim that the "plot" of both reality television programs is similar because both programs depict a group of dynamic contestants from varied backgrounds competing in business challenges in a dynamic corporate environment for promotions and benefits and, ultimately, a real job as a top-level executive of a corporation ..., However, Plaintiffs' alleged similarity is nothing more than a string of generic

"ideas" which is not protected by copyright law.

*Id.* at *11. Notably, courts have denied protection to the generic elements of a host and of conducting interviews about particular topics. *See, e.g., id.* at *13 (noting that "Plaintiffs cannot copyright the idea of having a well-known business leader, or even more specifically Donald Trump, host a reality television program."); *Bell,* 2001 WL 262718, at *4 ("The mere fact that some of the formats are similar (for example, the interview format) or the fact that the subject matter is similar (both works included articles on the weather, current events, hip hop music, prison life, ethnic targeting and drug crimes) do not give rise to valid copyright claims."); *Falotico v. WPVI–Channel 6,* 1989 WL 143238, at *3–4 (E.D.Pa.1989) (finding no protection for works that "concern the general subject of celebrities who came from South Philadelphia, both spotlight celebrities from that geographic area, and both cover similar facts about the lives of those celebrities.").

The stock elements of a host, guest' celebrities, an interview, and a cooking segment can also be characterized as unprotected *scenes a faire,* or "situations and incidents which flow naturally from [the] basic plot premise" of a cooking- and home-related talk show. *Berkic,* 761 F.2d at 1293; *see also Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1177 (9th Cir.2003) (finding that "the sequencing of first performing [a magic] trick and then revealing the secrets behind the trick is subject to the limiting doctrines of merger and *scenes a faire.*"); *Williams v. Crichton,* 84 F.3d 581, 589 (2d Cir.1996) (holding similarities of a "dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers ... are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo.").

Here, any similarities from Plaintiffs' *Showbiz Chefs* and the CBS Defendants' *Rachael Ray* are *scenes a faire* that naturally flow from the interview and talk-show format. For example, discussion of the celebrity's current projects is a natural outgrowth of a talk show. So is a tour of the celebrity's home, including the kitchen, especially in the context of a "lifestyle" show like *Rachael Ray*. Cooking segments may individualize the talk-show structure somewhat, but they still represent the outgrowth of the generic talk show, especially when the host can, in fact, cook. The alleged specific similarities of two shows with cooking, interviewing celebrities, and discussing celebrity projects are *scenes a faire* not protected by copyright law.

■ Similarly, the doctrine of "merger" precludes protection for these elements expressed in the standard form of a talk show. "[W]hen the idea and the expression are indistinguishable, or 'merged,' the expression will only be protected against nearly identical copying." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir.1994). For example, one California court found that a show featuring a host, a studio audience, studio guests, and the host showing outtakes on a large screen while adding commentary was not protected because there were only a limited number of ways in which the format of an outtakes show could be expressed. *See dick clark co. v. Alan Landsburg Prods.*, 1985 WL 1077775, at *3 (C.D.Cal.1985). "The formats of the two shows look similar, but so do the formats of virtually every television news show. The 'look' of a show is not the proper subject of copyright protection. The scope of copyright protection was never intended to go this far." *Id.* at *4.

Here, there are only a finite number of ways in which to express the idea of a talk/cooking show with celebrities. Placing the host in a studio, inviting celebrity guests into the studio, and discussing current projects is naturally expressed by having the sort of common talk show format present in *Rachael Ray*. Presenting segments in which the host and celebrities cook in the studio is also only one of a limited number of ways to express the idea of a cooking show. As the court in *dick clark* stated, the formats of *Showbiz Chefs* and *Rachael Ray* may look similar, but so does every talk show to some extent. Extending copyright protection over the generic format of a cooking/talk show would stretch the bounds of copyright law beyond what it was intended to cover. As a result, Plaintiffs cannot establish infringement over these basic elements of a talk show/cooking show.

### 2. Any Protectable Elements in Plaintiff's Show Are Dissimilar to Rachael Ray.

■ Even assuming some elements of Plaintiffs' Show are protectable, *Showbiz Chefs* is not substantially similar to *Rachael Ray*. Again, the Court must apply the objective "extrinsic test" and determine whether there are "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in *Showbiz Chefs* and *Rachael Ray*. *Funky Films*, 462 F.3d at 1077.

#### a. Plot

"Plot" is defined at the "sequence of events by which the author expresses his theme or idea" that is sufficiently concrete to warrant a finding of substantial similarity if it is common in both works. 4 *Nimmer on Copyright* § 13.03[A][1][b], at 13–42 (2003). Although not a "plot," the sequencing of *Showbiz Chefs* and *Rachael Ray* contain no true similarity outside of the commonplace elements discussed above. The only commonalities are the talk show format that features a host, guest celebrities, and cooking. *Rachael*

*Ray* contains segments on shopping, gift-giving, parenting, relationships, and fashion, along with cooking segments, either with Rachael Ray alone or with a guest, but always in the studio. *Showbiz Chefs*, however, features segments set almost exclusively in the celebrity's home, whether the host and celebrity are in an interview, eating, or cooking (except for a clandestine trip to the supermarket). While *Rachael Ray* sometimes includes a segment of a celebrity cooking alone in his or her home, this acts as more of an introduction to the segments set in the studio, rather than the centerpiece of the show. In short, the ordering of segments in *Rachael Ray* does not resemble the ordering in *Showbiz Chefs*.

### b. *Theme*

*Showbiz Chefs* contains no real discernable theme, while *Rachael Ray* is more of a "lifestyle" show that includes cooking segments. For example, host Rachael Ray dispenses household advice on myriad topics like shopping, fashion, and parenting, while at the same time inviting celebrities to discuss these topics or to share their own experiences. The "theme" includes what the CBS Defendants call a "can do" attitude, i.e., "if you try, you can do it" and presenting solutions to everyday problems. (Mot. at 21:19–21.) As the CBS Defendants describe the show, "Rachael Ray provides this inspirational 'can do' message and advice to those who need help—e.g., to mothers who do not think that they have the time or ability to make a family dinner, to women with low self-esteem and bad shopping habits, to those who need to redecorate their homes, to those who do not know how to cook a healthy meal for their children, to those who need to buy gifts on a tight budget, to those who need wedding advice, and to those who need fashion advice," (*Id.* at 21:20–27.)

The Court agrees with the CBS Defendants' essential point that the *Rachael Ray* show is more of a general lifestyle show than simply a cooking show featuring celebrities. *Showbiz Chefs*, in contrast, is much more specialized, seeking apparently to entertain the audience with celebrity interviews and perhaps impart some knowledge of cooking in the process. The theme seems to be an invitation to look inside celebrity homes, and perhaps get a glimpse of celebrity lifestyles. The focus, however, is not on the lifestyles of the viewers or audience. As such, the themes of the two shows appear to differ substantially.

### c. *Dialogue*

The dialogue in *Rachael Ray* does not resemble the dialogue in Plaintiffs' three-page script for *Showbiz Chefs*.

### d. *Mood*

The CBS Defendants implicitly concede that the mood of *Rachael Ray* and *Showbiz Chefs* is almost identical. Plaintiffs describe *Showbiz chefs* as "relaxed, informal and fun." (FAC, Ex. A.) *Rachael Ray* evokes a similar mood. The upbeat mood flowing from a cooking/talk show, however, is merely another example of *scenes a faire* and merger, common to all cooking/talk shows (indeed, it is difficult to imagine a somber show of this nature). *See Rice*, 330 F.3d at 1177 (holding that the mood of secrecy and mystery is both merged into and constitutes *scenes a faire* of a show about the "mysteries of magic"); *Olson v. National Broad. Co.*, 855 F.2d 1446, 1451 (9th Cir.1988) (finding that the comic mood is "common to the genre of action-adventure television series and movies therefore do not demonstrate substantial similarity."). Therefore, the relaxed, fun mood of the two shows is not a protectable element, even though it may be substantially similar.

### e. Setting

The setting of the two shows is generally different. *Showbiz Chefs* takes place exclusively within a celebrity's home (and perhaps a trip to the market), while *Rachael Ray* takes place in a studio with a live studio audience, which plays a role in the format of the show. Sometimes *Rachael Ray* episodes contain segments of celebrities cooking in their own homes, but, as noted above, the celebrities are alone and these scenes are minor introductions to the larger in-studio segments with the celebrities. While this may result in some overlap between the shows, it is not enough for a reasonable jury to find that the shows are substantially similar.

### f. Characters

The central "characters" in each show are the hosts and the celebrities. As discussed above, the generic idea to have a host is not protectable, *see Bethea*, 2005 WL 1720631, at *13, and Plaintiffs' sketch of the host of *Showbiz Chefs* as an "inept but well meaning sous chef" bears no resemblance to Rachael Ray, the host of *Rachael Ray*. Ray is presented as a competent celebrity chef in her own right, often presenting segments where she cooks alone for viewers. She also goes beyond cooking and performs an opening monologue, gives advice, and interacts with the studio audience. These features are absent from Plaintiffs' *Showbiz Chefs* treatment and script. Moreover, the portrayal of celebrities appears to be different, since some of the *Rachael Ray* episodes featuring celebrities appear to center on the *celebrity's* novice cooking skills and Ray's assistance in improving them. And in those episodes where the celebrity is a chef (e.g., Bobby Flay and Nigella Lawson), Ray adds her skills and works alongside the celebrity chef as a team effort, rather than performing ineptly, as the host does in *Showbiz Chefs*. Therefore, the "charac-ters" of the two shows are not substantially similar as a matter of law.

### g. Sequence of Events

As discussed in the context of plot, the segment sequencing in *Rachael Ray* does not resemble the structure of *Showbiz Chefs*. *Showbiz Chefs* includes two large segments in which the host cooks with and then interviews the celebrity in the celebrity's home. Plaintiffs have not pointed out any episodes of *Rachael Ray* in which this sequence occurs, and in fact, the topics in each *Rachael Ray* episode change and the show does not follow any set format. Some episodes feature no celebrities at all. No reasonable jury could conclude that the sequence of events in the two shows is substantially similar.

Each factor relevant to the extrinsic test militates so strongly in the CBS Defendants' favor that no reasonable jury could conclude that *Rachael Ray* and *Showbiz Chefs* are substantially similar.

### 3. Plaintiffs Have Failed to State a Claim under Metcalf v. Bochco.

Plaintiffs concede that *Showbiz Chefs* contain a number of generic elements that are not protectable. (Opp'n at 13:7–18.) The Court has also concluded that any potentially protectable elements of *Showbiz Chefs* are not substantially similar to *Rachael Ray*. Despite this, Plaintiffs contend that, even if the component parts of *Showbiz Chefs* are not protectable (or, if the protectable elements are dissimilar to *Rachael Ray* ), "the particular sequence in which they place a number of elements (each of which individually may be unprotect[a]ble) can itself be a protect[a]ble element," citing *Metcalf v. Bochco*, 294 F.3d 1069, 1074–1075 (9th Cir.2002).

In *Metcalf*, the Ninth Circuit determined that "[t]he particular sequence in which an author strings a *significant* number of unprotectable elements can itself be

a protectable element." *Id.* at 1074 ("Each note on a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.") (emphasis added). This holding was based on the "striking" similarities between the plaintiffs' and defendants' works:

> Both the Metcalf and Bochco works are set in overburdened county hospitals in inner-city Los Angeles with mostly black staffs. Both deal with issues of poverty, race relations and urban blight. The works' main characters are both young, good-looking, muscular black surgeons who grew up in the neighborhood where the hospital is located. Both surgeons struggle to choose between the financial benefits of private practice and the emotional rewards of working in the inner city. Both are romantically involved with young professional women when they arrive at the hospital, but develop strong attractions to hospital administrators. Both new relationships flourish and culminate in a kiss, but are later strained when the administrator observes a display of physical intimacy between the main character and his original love interest. Both administrators are in their thirties, were once married but are now single, without children and devoted to their careers and to the hospital. In both works, the hospital's bid for reaccreditation is vehemently opposed by a Hispanic politician.

*Id.* at 1073–74. As a result of this resemblance, a jury "could easily infer that the many similarities between plaintiffs' scripts and defendants' work were the result of copying, not mere coincidence." *Id.* at 1075.

Many courts have been reluctant to expand this concept beyond the clear-cut case presented in *Metcalf. See, e.g., Identity Arts,* 2007 WL 1149155, at *4 ("However, in *Metcalf,* the 'many' generic similarities and patterns present in the works in question were much more voluminous and specific than in this case."); *Bethea,* 2005 WL 1720631, at *14–15 (rejecting a *Metcalf* argument and holding that, "[w]hen taken separately or as a whole, the common elements of *C.E.O.* and *The Apprentice* simply do not allow for a reasonable inference that the works are substantially similar in expressive content."); *Rice,* 330 F.3d at 1178–79 (rejecting the plaintiff's *Metcalf* argument because the case did not involve the "same pattern of generic similarities").

Here, Plaintiffs fail to point to any string of unprotected elements in *Rachael Ray* that resembles *Showbiz Chefs* in the sort of magnitude contemplated by the *Metcalf* court. Rather, Plaintiffs point out random similarities between *Showbiz Chefs* and *Rachael Ray* to support their *Metcalf* claim. Courts have routinely rejected *Metcalf* claims over random similarities. *See, e.g., Flynn v. Surnow,* 70 U.S.P.Q.2d 1231, 1238 (C.D.Cal.2003) (rejecting a *Metcalf* theory because the alleged similarities are "randomly scattered throughout the works and have no concrete pattern or sequence in common."); *Kouf,* 16 F.3d at 1045–46 ("And, we are equally unimpressed by Koufs compilation of random similarities scattered throughout the works[.])" (internal quotation marks omitted); *Litchfield v. Spielberg,* 736 F.2d 1352, 1356 (9th Cir.1984) (rejecting a list of similarities between works because "they are inherently subjective and unreliable. We are particularly cautious where, as here, the list emphasizes random similarities scattered throughout the works.").

Plaintiffs' claimed similarities between *Rachael Ray* and *Showbiz Chefs* consist of randomly selected similarities of generic elements: "*Showbiz Chefs* paints a television show where in each episode the host engages a celebrity in a home or restaurant setting, with cooking that is personal

to the guest and provides the audience a glimpse into their lifestyles." (Opp'n at 11:4–6.)[9] These random elements (i.e., a talk show, cooking, a host, a celebrity, and kitchens) appear at different points in *Showbiz Chefs* and *Rachael Ray* and Plaintiffs cannot merely cobble them together to make a *Metcalf* argument. To do so would give Plaintiffs a monopoly over these generic elements expressed as a television talk show featuring celebrity guests and cooking. Therefore, the Court rejects Plaintiffs' attempt to bring their claim under *Metcalf.*

## V. CONCLUSION

The Court finds that it may rule on Plaintiffs' copyright claim against the CBS Defendants as a matter of law. They have attached to their Complaint the one-page synopsis and three-page script for *Showbiz Chefs,* so the Court may consider it on a motion to dismiss. The Court may also consider the *Rachael Ray* show, as its content comprises the basis for Plaintiffs' claim and the CBS Defendants have, provided copies of episodes. The Court holds that no reasonable jury could conclude that *Rachael Ray* is substantially similar to any protectable elements of *Showbiz Chefs* or to the order in which Plaintiffs have presented non-protectable elements in *Showbiz Chefs.*

Therefore, the Court GRANTS the CBS Defendant's Motion to Dismiss and DISMISSES with prejudice Plaintiffs' first claim for copyright infringement against them. Because Plaintiffs allege no other claims against the CBS Defendants, the Court DISMISSES Defendants CBS Television Distribution, King World Produc-

tions, Inc. and Harpo Productions, Inc. from this case.

**IT IS SO ORDERED.**

---

9. The Court notes that this description of *Showbiz Chefs* is misleading at best. Plaintiffs' treatment and script does not depict a show set in any "home", but specifically in the celebrity's home, and does not mention a restaurant setting at all.