NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 2 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOE GREGORY CARLINI, an individual, | No. 21-55213 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-08306-SB-RAO |
| v. | |
| PARAMOUNT PICTURES CORPORATION, a Delaware corporation; WILL PACKER PRODUCTIONS, INC., a California corporation; BLACK ENTERTAINMENT TELEVISION, a district of Columbia limited liability corporation; TINA GORDON CHISM, an individual; PETER HYUCK, an individual; ALEX GREGORY, an individual; JAS WATERS, an individual; WILL PACKER, an individual; JAMES LOPEZ, an individual; DOES, 1 through 100, inclusive, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted February 17, 2022
Pasadena, California

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: BRESS and BUMATAY, Circuit Judges, and LASNIK,[**] District Judge.

Joe Carlini appeals the district court's dismissal of his copyright infringement action against Paramount Pictures Corporation. Carlini claims Paramount's movie *What Men Want* ("*WMW*") infringed Carlini's copyright in *What the F is He Thinking*, an unpublished screenplay that Carlini co-authored. We review de novo the district court's granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), construing the allegations in the complaint in favor of the plaintiff. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

To allege copyright infringement, Carlini must sufficiently allege unlawful appropriation and copying. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Unlawful appropriation requires a plaintiff to allege that there are "*substantial* similarities" between the two works. *Id.* "Copying" may be shown with "direct evidence of copying" or "by showing that the defendant had access to the plaintiff's work." *Id.* The district court correctly concluded that Carlini failed to allege unlawful appropriation.[1]

---

[**]    The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

[1]  Because Carlini fails plausibly to allege that the two works are substantially similar, we do not reach whether Carlini adequately pleaded access.

*First*, Carlini did not sufficiently allege that the two works were substantially similar. To assess substantial similarity, we apply the extrinsic test. *See id.* Under that test, "[a] court must take care to inquire only whether the *protectible elements, standing alone*, are substantially similar." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quotations omitted). "Scenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id.* at 823. The extrinsic test "is objective in nature" and "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (quotations omitted), *overruled on other ground by Skidmore*, 952 F.3d at 1067–69. After a careful review of the two works, we conclude they are not substantially similar as a matter of law.

Most notably, the plots of each work are not substantially similar. Both works follow a woman who gains the ability to hear men's thoughts, but the plots diverge substantially from there: *WMW* focuses primarily on the protagonist navigating career struggles, whereas Carlini's screenplay focuses on two people in relationships with the wrong person. *See Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) (finding a lack of substantial similarity when, "[t]hough the Screenplay and the Film share the same basic plot premise, a closer inspection

reveals that they tell very different stories"), *overruled on other grounds by Skidmore*, 952 F.3d at 1067–69. Although Carlini points to superficial similarities in how the main characters gain their mind-reading powers, the events play out in materially different ways in each work. Other features of the plot that Carlini focuses on are unprotectable *scenes à faire* associated with a story about hearing the private thoughts of other persons. *See Cavalier*, 297 F.3d at 822.

Carlini's list of 16 different "events" also fails plausibly to allege substantial similarity based on the sequence of events in both works. Although it is appropriate to "rel[y] on such lists of similarities . . . for illustrative purposes," this court is "particularly cautious where . . . the list emphasizes random similarities scattered throughout the works." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (quotations omitted). Carlini advances that kind of list. In this case, any similarities in sequencing are commonplace or, given the plot premise, unremarkable. They do not "belie[] any claim of literary accident." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (quotations omitted), *overruled on other grounds by Skidmore*, 952 F.3d at 1067–69.

Other features of the two works likewise belie Carlini's allegations that the works are substantially similar. The female protagonists are not similar: one is a junior high school teacher in her mid-20s, and the other is a high-powered, career-obsessed, sports agent trying to succeed at a firm dominated by men. The

4

protagonists' male love interests share generic characteristics commonly found in romantic comedies. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1176 (9th Cir. 2003) ("[W]hile there may exist similarities between the . . . 'characters,' any shared attributes . . . are generic and common[.]"), *overruled on other grounds by Skidmore*, 952 F.3d at 1067–69. And while TJ and Brandon have some similarities as the gay best friends of the protagonists, they are otherwise quite different. TJ, described as "energetic, very colorful and flamboyant," has no work relationship with the protagonist, and acts as her best friend throughout the story. In contrast, Brandon is portrayed as a reserved and career-oriented assistant whom the protagonist treats poorly for most of the film.

Other aspects of the works, such as themes, settings, dialogue, and mood and pace are not substantially similar either, or else are unprotectable *scenes à faire* of a romantic comedy. And the isolated lines of dialogue that Carlini relies on do not demonstrate substantial similarity because "extended similarity of dialogue [is] needed to support a claim of substantial similarity." *Olson v. National Broad. Co., Inc.*, 855 F.2d 1446, 1450 (9th Cir. 1988).

**AFFIRMED.**